BROWN, Chief Judge,
concurring.
| ¶ That Dennis Clem committed these murders without Tanya Smith’s knowledge or forewarning is the core of the defense. Gang evidence has great probative value in explaining motivation and intent. Implicit in the definition of “gang” is complicity. Tattoos are drawings with coded messages that dramatically provide insight into the individual. The expert decoded the symbols and identified gang affiliation and culture. In this case, the evidence was relevant to prove motivation and intent. Certainly it was prejudicial; all probative evidence is. These tattoos, as interpreted by the expert, communicated defendant’s partnership in these cowardly and heinous murders.
Rather than evaluating this as “other crimes” evidence, I believe that the correct analysis for the introduction of this evidence was for its relevancy. Standing alone, tattoos and gang affiliation are not “other crimes.”
The Fourth Amendment explicitly affirms the right of the people to be secure in their persons, houses, papers and effects from unreasonable search and seizure. The Fifth Amendment prohibits compelled self-incrimination. In a “tell all” fashion, defendant voluntarily displayed on her *398 body for all to see her beliefs, desires, fantasies and hatreds. Her message was inscribed in plain view. There was no unreasonable taking. Further, there was no compelled self-incrimination. This was not a zone of privacy that the government forced defendant to surrender.
|2The shooting in Houston was other crimes evidence. Because both Dennis Clem and defendant were convicted felons and on parole, their freedom of association was limited and their possession of firearms was also criminal. This evidence was, however, an integral part of the plan leading to the killing of the officers in Louisiana. The shootings in Louisiana were not a spur of the moment decision. It all started in Houston where defendant handed an assault rifle to Clem who then shot into a fleeing vehicle killing two of its occupants. Defendant told a neighbor to hide the assault rifle and threatened him if he “ran his mouth.” The couple then fled to Louisiana heavily armed and made statements that they would not return to prison. Their motivation to die in a violent shootout was conspicuously inscribed on their bodies and affirmed by their actions. Both defendant and Clem were armed and ready when defendant let the officers into the room, and both participated in the shooting. Several rounds were fired from two different guns and a shell casing from a third gun was found. Defendant left the scene while Clem stayed in the room and was killed during the shootout with police. Although indicted for second degree murder, defendant could have appropriately been charged with first degree murder and subject to capital punishment.